NOT DESIGNATED FOR PUBLICATION

No. 127,236

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LOGAN D. CASTEEL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Submitted without oral argument. Opinion filed June 13, 2025. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Kris. W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., COBLE and BOLTON FLEMING, JJ.

PER CURIAM: After a long series of hostile interactions, Logan D. Casteel shot Justin Smith three times on October 17, 2022. As a result, the State charged Casteel with one count of attempted first-degree murder, and, alternatively, one count of aggravated battery. The case went to trial in October 2023. At the close of trial, the district court instructed the jury on the crime of attempted first-degree murder by also instructing on the lesser included offenses of attempted second-degree murder and attempted voluntary manslaughter (based upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person).

1

The jury found Casteel guilty of the lesser included crime of attempted voluntary manslaughter as well as the alternative charge of aggravated battery. After the jury's verdict, the district court dismissed the attempted voluntary manslaughter charge and sentenced Casteel to the greater offense of aggravated battery. Casteel appeals the district court's decision, arguing the district court should have instead dismissed the crime of aggravated battery. Casteel also argues that the district court erred by failing to instruct the jury on a lesser included offense of attempted involuntary manslaughter. After a thorough review of the record, we find the district court correctly followed Kansas' rules governing convictions and sentencing for alternative charges when it dismissed Casteel's attempted voluntary manslaughter charge and sentenced him to the greater offense of aggravated battery. We further find an instruction on attempted involuntary manslaughter would be legally inappropriate under Kansas law. Accordingly, we affirm Casteel's conviction and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

Logan D. Casteel and Justin Smith had a long history of disagreements. Prior to the incident at hand, some of these disagreements rose to the level of physical violence. The two men were linked by a man named George Fosdick. Smith worked for Fosdick and Casteel was the father of two children with Fosdick's daughter. Casteel and Smith would also sometimes work on the same construction crew. Because of this common connection, the two men attempted to get along, with mixed results. It is undisputed that on the day in question, October 17, 2022, an altercation ensued that culminated in Smith punching Casteel and Casteel shooting Smith. Casteel's bullets hit Smith's right forearm and both legs, but Smith's injuries were not fatal.

Following the shooting, the State charged Casteel with one count of attempted first-degree murder, or, alternatively, one count of aggravated battery. Casteel filed a motion for immunity from prosecution under K.S.A. 21-5231—claiming his use of force

2

was done in self-defense. After an evidentiary hearing on the motion, the district court denied it, finding that the State had presented probable cause that Casteel's use of force was not justified.

The case went to a jury trial in October 2023. At the close of trial, in addition to the original counts, the district court instructed the jury on lesser included offenses of attempted first-degree murder that included attempted second-degree murder and attempted voluntary manslaughter (based upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person).

The jury returned a verdict finding Casteel guilty of both attempted voluntary manslaughter and aggravated battery. The district court accepted the jury's verdict, dismissed the count of attempted voluntary manslaughter, and found Casteel guilty of the alternative count of aggravated battery—the higher severity offense.

Casteel filed a renewed motion for immunity in November 2023, which the district court denied. The district court then sentenced Casteel to 52 months in prison followed by 36 months of postrelease supervision for his aggravated battery conviction. Casteel now appeals.

ANALYSIS

*The District Court Did Not Err by Dismissing Casteel's Attempted Voluntary Manslaughter Charge and Sentencing Him to the Greater Offense of Aggravated Battery*

Casteel argues that the district court erred by dismissing his attempted voluntary manslaughter charge and sentencing him to the greater offense of aggravated battery based on Casteel's interpretation of K.S.A. 21-5109(d) (stating that when one crime prohibits conduct generally and the other prohibits a specific instance of such conduct, the defendant shall be sentenced according to the terms of the more specific crime).

3

*Preservation*

Casteel did not object when the district court dismissed his attempted voluntary manslaughter charge and sentenced him on the aggravated-battery charge—raising this issue for the first time on appeal. And generally, appellate courts do not consider issues raised for the first time on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). But Casteel argues that this issue may be heard because his sentence was illegal, and an illegal sentence may be corrected at any time while the sentence is being served. K.S.A. 22-3504(a).

An illegal sentence is defined by statute as a sentence that either: (1) is imposed by a court without jurisdiction; (2) does not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) is ambiguous about the time and manner in which it is to be served. K.S.A. 22-3504(c)(1). Casteel argues that his sentence did not conform in punishment to K.S.A. 21-5109(d) because "the district court should have sentenced him under the more specific crime, but did not do so." Another panel of this court has agreed that issues of general versus specific conduct under K.S.A. 21-5109(d) may be raised as an illegal sentence for the first time on appeal. *State v. Stohs*, 63 Kan. App. 2d 500, 502, 531 P.3d 533, *rev. granted* 317 Kan. 850 (2023).

The State does not address Casteel's argument that this issue can be addressed as an illegal sentence but nonetheless concedes preservation by pointing to another exception to the general rule barring issues raised for the first time on appeal—that the "'newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case.'" *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). As the State points out, our Supreme Court has previously agreed that an appellant's argument that they should have been sentenced only to a more specific crime under K.S.A. 21-5109(d) was suitable for resolution under this exception. *State v. Williams*, 299 Kan. 911, 929-930, 329 P.3d 400 (2014). Because the parties do not

4

contest the underlying facts supporting Casteel's charges and only disagree about the statutory provisions that govern his sentencing, this claim involves only a question of law on proved or admitted facts.

Accordingly, although Casteel did not raise this issue at the district court, we may consider it for the first time on appeal as an issue raising a claim of an illegal sentence— which may be corrected at any time—or, alternatively, under the exception for issues involving only a question of law arising on proved or admitted facts, which is finally determinative of the case.

*Standard of Review*

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). When interpreting a statute, Kansas appellate courts "'first attempt to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted.'" 316 Kan. at 198. In this endeavor, "'a clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ any of the canons that support such construction.'" 316 Kan. at 198.

*K.S.A. 21-5109(d) Does Not Apply to Casteel's Charged Crimes*

Casteel contends that attempted voluntary manslaughter based on imperfect self-defense prohibits a more specific instance of the same conduct that is generally prohibited by aggravated battery, so the district court should have sentenced him only to attempted voluntary manslaughter, in line with K.S.A. 21-5109(d).

K.S.A. 21-5109(d) prohibits convictions for two crimes based on the same conduct "when crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." In such scenario, the defendant "[m]ay not be convicted of the two crimes based upon the same conduct" and "shall be sentenced according to the terms of the more specific crime." K.S.A. 21-5109(d).

The State concedes that the two charges arose from the same act of violence but contends that K.S.A. 21-5109(d) does not apply because attempted voluntary manslaughter and aggravated battery punish different conduct and require different degrees of mental culpability—so neither is a more or less specific version of the other crime.

Here, the jury found Casteel guilty of both attempted voluntary manslaughter based on imperfect self-defense and aggravated battery.

Attempted voluntary manslaughter includes the elements for attempt and the underlying crime of voluntary manslaughter:

Attempt requires:

- any overt act toward the perpetration of a crime,
- done by a person who intends to commit such crime,
- but fails in the perpetration thereof or is prevented or intercepted in executing such crime. K.S.A. 21-5301(a).

Voluntary manslaughter based on imperfect self-defense requires:

- knowingly killing a human being

6

- committed upon an unreasonable but honest belief that circumstances existed that justified use of deadly force. K.S.A. 21-5404(a)(2).

Attempt is a specific-intent crime, and when the statute defining the intended crime does not include attempt as a means of violating that statute, K.S.A. 21-5301(a) functions as a default rule, which "requires the State to prove the defendant had the specific intent to commit the intended crime, even if that crime would not require specific intent as a completed crime." *State v. Mora*, 315 Kan. 537, 543, 509 P.3d 1201 (2022). Here—because K.S.A. 21-5404(a)(2) does not include attempt as a means of violating the statute—under the default rule in K.S.A. 21-5301(a), Casteel must have specifically intended to commit attempted voluntary manslaughter. To prove intent, it must have been Casteel's "conscious objective or desire to engage in the conduct or cause the result." K.S.A. 21-5202(h).

On the other hand, aggravated battery requires:

- knowingly
- causing great bodily harm to another person or disfigurement of another person. K.S.A. 21-5413(b)(1)(A).

Aggravated battery is a general-intent crime. See K.S.A. 21-5202(i). To prove that Casteel acted knowingly, he must have been aware of the nature of his conduct, of the circumstances in which he was acting, or that his conduct was reasonably certain to cause the result. K.S.A. 21-5202(i).

The State is correct that attempted voluntary manslaughter and aggravated battery require different levels of mental culpability and punish different conduct. Attempted voluntary manslaughter requires a defendant to act intentionally, and aggravated battery only requires a defendant to act knowingly. More specifically, for the crime of attempted

7

voluntary manslaughter (imperfect defense), Casteel must have intended to kill based upon an unreasonable but honest belief that circumstances existed that justified use of deadly force. But for the crime of aggravated battery, Casteel must have only knowingly caused great bodily harm or disfigurement—Casteel was not required to have intended to kill. Another key difference between the two crimes is the harm suffered by the victim. Attempted voluntary manslaughter does not require that the victim suffer harm, whereas aggravated battery as charged in this case requires great bodily harm or disfigurement.

Our Supreme Court recently considered whether a district court violated K.S.A. 21-5109(d) by convicting a defendant of both premeditated first-degree murder under an aiding and abetting theory and conspiracy to commit first-degree murder. *State v. Alston*, 318 Kan. 979, 551 P.3d 116 (2024). The Supreme Court analyzed the elements of each statute and found that "while there may be overlap between the proof of aiding and abetting and conspiracy, the two statutes are aimed at different evils and serve different purposes." 318 Kan. at 987-88. Summarizing its discussion, the Supreme Court explained "[e]ven if the two convictions involve a single act of violence, they are different offenses because the convictions arise from violations of different statutes with different elements. The convictions thus . . . are not prohibited under K.S.A. 21-5109(d)." 318 Kan. 979, Syl. ¶ 1.

Here, although the same act of violence was used to prove both charges of attempted voluntary manslaughter and aggravated battery (Casteel shooting Smith three times), the statutes are aimed at different conduct and require entirely different elements of proof. Thus, attempted voluntary manslaughter does not punish a more specific instance of conduct generally prohibited by aggravated battery. Accordingly, K.S.A. 21-5109(d) does not apply to the crimes Casteel committed.

8

*The District Court Correctly Dismissed Casteel's Lesser Charge*

Because K.S.A. 21-5109(d) does not govern Casteel's convictions, the State argues that the district court correctly sentenced Casteel to aggravated battery based on Kansas' rules governing convictions and sentencing for alternative charges. Casteel did not file a reply brief addressing this argument.

"When a defendant has been charged in the alternative, the defendant may be convicted of only one of the alternative offenses." *State v. Garza*, 290 Kan. 1021, Syl. ¶ 5, 236 P.3d 501 (2010). In this scenario—when a jury returns guilty verdicts on two alternatively charged counts—the doctrine of merger applies, and the district court must accept only the verdict as to the greater charge. *State v. Vargas*, 313 Kan. 866, 873, 492 P.3d 412 (2021).

The jury returned a verdict finding Casteel guilty of both attempted voluntary manslaughter and aggravated battery—which the state had charged in the alternative. The district court accepted the jury's verdict, dismissed the count of attempted voluntary manslaughter, and found Casteel guilty of aggravated battery. Attempted voluntary manslaughter is a severity level 5-person felony. K.S.A. 21-5404(b); K.S.A. 21-5301(c)(1). Aggravated battery, as charged here, is a severity level 4-person felony. K.S.A. 21-5413(h)(2)(A). Thus, the district court correctly applied the doctrine of merger and accepted only the verdict for aggravated battery—the greater charge in this case. Accordingly, the district court did not err in sentencing Casteel.

*The District Court Did Not Err by Failing to Instruct the Jury on the Possibility of "Attempted Involuntary Manslaughter"*

Casteel argues that the district court committed clear error by not instructing the jury on the crime of "attempted involuntary manslaughter," which he claims is a lesser-included offense of attempted first-degree murder (the offense with which he was

originally charged). The State counters that since the district court correctly dismissed Casteel's attempted voluntary manslaughter charge, this argument is essentially moot because any lesser included offense of that charge would still have been dismissed. The State further argues that even if the charge had not been dismissed, such an instruction would be legally inappropriate, and thus the district court did not err.

Claims of error based on jury instructions require a multi-step analysis. *State v. Barnes*, 320 Kan. 147, 172, 563 P.3d 1255 (2025). Appellate courts should: first, "'consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review'"; second, "'use an unlimited review to determine whether the instruction was legally appropriate'"; third, "'determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction'"; and if the district court erred, then fourth "'determine whether the error was harmless.'" 320 Kan. at 173.

Under the first step of the analysis, Casteel's argument is unpreserved for review. Casteel never objected to the lack of a jury instruction on attempted involuntary manslaughter, nor did he request that the district court include such an instruction. When a party does not object to the lack of a jury instruction, any claim of error on appeal may only be considered if "the failure to give an instruction is clearly erroneous." K.S.A. 22-3414. Thus, the "'first element of this analysis ultimately affects the last one "in that whether a party has preserved an issue for review will have an impact on the standard by which we determine whether an error is reversible."'" 320 Kan. at 173 (quoting *State v. Ross*, 310 Kan. 216, 223, 445 P.3d 726 [2019]).

But the inquiry need not go that far, because Casteel's argument does not pass the second step of the analysis. As the State argues in its brief, it would be legally inappropriate to instruct the jury on the supposed crime of attempted involuntary manslaughter because such a crime does not exist in Kansas. Thirty years ago, the Kansas

10

Supreme Court held that our state does not recognize the crime of attempted involuntary manslaughter. *State v. Collins*, 257 Kan. 408, Syl. ¶ 4, 893 P.2d 217 (1995). Because attempt requires specific intent to commit the crime, "to establish the crime of attempted involuntary manslaughter the person would be required to specifically intend to commit an unintentional crime." 257 Kan. at 419. As our Supreme Court emphasized, such an outcome would pose a "logical impossibility." 257 Kan. at 419. Because Kansas does not recognize the crime of attempted involuntary manslaughter, the district court did not err by not including a jury instruction on such crime.

Affirmed.